USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
  UNITED STATES,

                 -v-                               1:16-cr-GHW-2

  JONATHAN PEREZ,                      ORDER

                          Defendant.
-------------------------------------------------------------- X
GREGORY H. WOODS, United States District Judge:

       On December 14, 2020, the Court docketed a motion filed by Jonathan Perez, acting *pro se*. The motion requested that the Court order his compassionate release pursuant to 18 U.S.C. § 3582(c). Dkt. No. 835 (the "Motion"). Mr. Perez's motion asks for the Court to order his compassionate release. The Motion provides three bases for the Court to find extraordinary and compelling reasons for his release. The first is the fact that he has been diagnosed with a pre-diabetic condition, and that COVID-19 is at large in his facility. Motion at 1. The second reason consists of Mr. Perez's "family circumstances." *Id.* And the third is the fact that Mr. Perez argues that there was an undue disparity between his sentence and that of a co-defendant. For the reasons that follow, Mr. Perez's motion is denied.

       Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)). As relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons." The "First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Such circumstances include, but are not limited to, circumstances where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." 1 U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant, however, must not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § B1.13(2)–(3).

Mr. Perez was the supervisor of a drug trafficking organization that operated in the Highbridge neighborhood in the Bronx. Sentencing Transcript ("Tr."), Dkt. No. 419, at 25:19-25. Mr. Perez was responsible for the sale of very large quantities of drugs, including crack--which he supplied to other members of the conspiracy--heroin, and oxycodone. Tr. 26:1-11. Mr. Perez packaged and stored heroin in the apartment of his partner, where she was raising her young children. *Id.* at 28:1-3. While Mr. Perez describes himself in his Motion as a "non-violent" offender, Mr. Perez used a firearm during the course of the conspiracy. *Id.* at 26:11-16. Mr. Perez was the driver in a car involved in a shootout with rival drug dealers, which resulted in a car crash, and Mr. Perez being shot. *Id.*

Mr. Perez pleaded guilty to two crimes: conspiracy to distribute and possess with intent to distribute crack, in violation of 21 U.S.C. 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(B), and

possession of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Given the volume of narcotics for which Mr. Perez was responsible, as well as his leadership enhancement, the guidelines offense level for Mr. Perez's crimes was 33, accounting for a three offense level reduction as a result of his timely plea. Tr. at 6:10-7:2. Mr. Perez had two criminal history points. As a result, he was in criminal history category II. This yielded an advisory guidelines range for the drug trafficking offense of 151 to 188 months imprisonment. The other count of conviction required a mandatory consecutive sentence of 60 months. *Id.* at 7:18-22. The Court imposed a guidelines sentence on Mr. Perez--of 163 months for the drug trafficking offense, to be followed by 60 months for his firearms offense. Tr. at 34:3-6.

Mr. Perez was born in 1992. Tr. at 26:25. He is 28 years old today. At the time of sentencing, the Court noted that Mr. Perez is "generally healthy." He suffered from high blood pressure and some back pain after a childhood fall. Tr. at 28:13-16. In his Motion, Mr. Perez asserts that he has been diagnosed with a pre-diabetic condition. Motion at 2. Mr. Perez acknowledges that "pre-diabetes is not indicated as by the CDC as an underlying risk, per se . . . ." *Id.* But, he argues, without citation, that "elevated AIC levels have been found to increase complications associated with COVID-19." *Id.*

Mr. Perez asserts that his "facility and housing unit are under newly implemented lockdown procedures" as a result of possible inmate exposures. The Motion provides a breakdown for the number of cases in the Allenwood complex in which he is incarcerated. Motion at 3.

Mr. Perez provides few facts in his Motion to describe the family circumstances that justify his early release: he asserts that he has "multiple family members needing assistance in daily living." *Id.* And, finally, Mr. Perez argues that he believes that the fact that his sentence was greater than that of one or more co-defendants in this multiple-defendant case, with "the same amount of 'sales' in addition to a prior criminal history" also provides an extraordinary and compelling reason for his

early release. *Id.*

At the outset, the Court accepts that Mr. Perez has satisfied the statutory preconditions to his Motion. In the Motion, he writes that "30 days have now passed since his request to BOP administrators with no motion filed by the BOP on Petitioner's behalf." Motion at 1. While Mr. Perez's Motion leaves blank the specific dates on which he made the request and on which he was denied, the Court accepts his statement regarding exhaustion at face value for purposes of evaluating the Motion.

The Court is not persuaded by the defendant's arguments in support of a finding that "extraordinary and compelling" reasons exist for his release. A number of courts have found "extraordinary and compelling circumstances" for the release of an inmate based on the risk associated with COVID-19 and the incremental additional risk associated with the inmate's underlying health conditions. Here, Mr. Perez acknowledges that the pre-diabetic condition on which his motion rests has not been recognized by the CDC as increasing the risk associated with COVID-19. In this case, the existence of COVID-19 together with the incremental risk associated with Mr. Perez's pre-diabetic condition and high blood pressure does not constitute an extraordinary and compelling reason to modify Mr. Perez's sentence. This is particularly true given Mr. Perez's relative youth--he is in an age cohort in which the risk of COVID-19 is relatively low, when compared with older populations.

Mr. Perez's family commitments do not constitute extraordinary and compelling reasons for early release. The Court accepts that Mr. Perez has family members who would benefit from his support. As the Court noted at sentencing, describing the letters submitted on Mr. Perez's behalf: "They describe Mr. Perez as a bright, intelligent man, one who is helpful to his family, who has a desire to nurture . . . ." Tr. at 27:20-22. But the fact that he has family outside of prison who would prefer for him not to be there so that he can be more engaged in their lives is, sadly, not

4

extraordinary. And, while the Court has broad discretion to consider factors giving rise to extraordinary and compelling circumstances, *United States v. Brooker*, 976 F.3d at 237, the Court does not believe that this provides an additional avenue for an inmate to dispute the propriety of the Court's original sentencing decision.

Moreover, even if Mr. Perez's health conditions and the incremental risk associated with the possibility of catching COVID-19 at his facility, or any of his other arguments, were sufficient to give rise to compelling and extraordinary reason for his release, the Court would not grant the requested relief.

In considering all of the § 3553(a) factors, the Court does not believe that a reduction in Mr. Perez's sentence is warranted. While the factor related to the need for Mr. Perez to receive medical care arguably weighs somewhat more heavily in favor of a lesser sentence now, the nature of his crimes was very serious: he was a leader of a drug trafficking organization that used guns in support of its operations. The Court's assessment of all of the other § 3553(a) sentencing factors, all continue to weigh heavily against a modification of his sentence now. The Court commented on all of those factors at length in sentencing Mr. Perez, and will not retread them all here. The Court highlighted in particular its concerns regarding the need for personal deterrence for Mr. Perez:

> With respect to personal deterrence, I am extremely concerned about the possibility that Mr. Perez will be tempted to recidivate. Mr. Perez was the leader of this conspiracy. He is described as smart, ambitious, persuasive. He used those abilities over the course of many years to advance himself within this drug organization for his financial benefit. He continued to engage in the activity after witnessing firsthand the trauma that the violence that supported the organization had. He himself was shot, but he continued to distribute and sell drugs in bulk. His ambition, his intelligence, together with his lack of education and legitimate job history, make me extremely concerned that the defendant will again choose to use his skills to engage in the kind of criminal activity that brought us here.

Tr. at 30:11-24. The Court also commented on the need for general deterrence as having significant weight in its sentencing decision: "As counsel has described during our arguments here and as established in the facts in the PSR, Mr. Perez was not simply a retail level drug dealer. He was a

leader of this conspiracy, responsible for the distribution of several types of drugs in large quantity, with respect to the crack at least, and his machinations caused real harm for his community." *Id.* at 31:13-20. The Court is very pleased to read of Mr. Perez's development in prison, and the fact that he is taking advantage of the opportunities there to work toward obtaining a GED. Motion at 4. But the Court's evaluation of the § 3553 factors do not lead to the conclusion that Mr. Perez's sentence should be reduced as he requests.

In sentencing Mr. Perez, the Court was very conscious of the admonition of § 3553 to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of the statute. The sentence imposed by the Court was appropriate for Mr. Perez at the time and the Court's assessment of the § 3553(a) factors do not yield a different conclusion today, notwithstanding COVID-19 and its complications.

In sum, having considered all of the information presented to the Court in connection with this application, the Court does not believe that a reduction in Mr. Perez's sentence is warranted. His motion is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 835, and to mail a copy of this order to Mr. Perez by first class mail.

SO ORDERED.

Dated: December 27, 2020

                                                GREGORY H. WOODS
                                                United States District Judge